IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES | * |
| | * |
| | * |
| V. | * |
| | *   NO: 4:11CR00010 SWW |
| | * |
| | * |
| TOM MUELLER | * |
| | * |

**ORDER**

Defendant Tom Mueller, charged with possession and receipt of child pornography, moves to suppress from evidence one of two computers, and its contents, seized by detectives on August 23, 2010 at Mueller's residence (docket entry #12). The United States filed a response in opposition (docket entry #14 ), the Court held a suppression hearing on October 17, 2011, and both parties filed post-hearing supplemental briefs (docket entries #25, #26, #31, #33). After careful consideration, and for reasons that follow, the motion to suppress is denied.

**I.**

In August 2010, James Gadberry went to the Searcy Police Department and gave Detective Steven Taylor the following statement:

> My name is James Gadberry. I am 42 [years] old and live in Searcy, Arkansas. Over the past 5 to 6 years[,] I have been acquainted with a man named Tom Mueller [and] his wife Debra. . . .
>
> The Sunday after Christmas of 2009 (December 27, 2009) Debra Mueller called and asked if I could come to she [and] Tom's house. Debra said she & Tom had been arguing over some disturbing files she had found on a laptop computer that she [and] Tom shared. She also told me she had found similar files on a separate laptop that

Tom primarily used.

When I got to their house, there were pieces of laptop broken [and] strewn about the font porch. Debra told me she had smashed this computer after finding the files. She later found similar files on the laptop that she [and] Tom share.

Debra said the files had names such as "12 year old girl, naked, pussy, illegal porn" and other titles which tended to suggest the content of the files could be child pornography.

Debra asked if I knew how to make copies of these files so she would have documentation of the files. I came to Debra's house and copied the file names on to a CD, which I then kept.

To be clear, the CD I copied does NOT contain any visible images–just file names, and the locations on the computer where each filed is stored. We could not access and view each image, as each image required a password to view, and we did not have the password.

The laptop I copied the CD from was similar in appearance to most laptops. It was black [and] silver in color, and did not have any unusual or distinctive features that would make it distinguishable from most other laptops I have seen. I do not recall any more specific information as to make or model of the laptop.

Within a day or so of copying the files, I confronted Tom about the situation. Tom broke down [and] cried. He told me that the "devil had a hold" of him, and that he enjoyed watching child pornography. Tom told me he knew this was a problem and that he was going to get counseling with this problem.

I told Tom that I would hold on to the disc I had copied, under some conditions. I told Tom that he had to get counseling, and that he was to remove himself from situations where he would be alone with young children.

Tom said he had sought help with a counselor at Harding University, and that he also was seeking help from a sexual addiction clinic in Mississippi (he said it was the same clinic Tiger Woods went to).

I do not know for certain if Tom ever got any counseling, but I had no reason to believe that he did not.

I did recently learn that Tom is continuing to put himself in situations where he is around young children (including his [12-year-old] stepdaughter) unsupervised.

In light of this, I felt that the right thing to do was to make the police aware of the

>situation.
>
>I took the CD I had burned from Debra's laptop and turned it over to Searcy Police Chief Kyle Osborne on 8/12/10.
>
>I also feel that the police should be aware that approximately 3 or 4 months after I made the CD, Debra asked me if she could have the CD back. I asked Debra why she wanted it. She told me that Tom's counselor wanted to see it. I did not believe her, but I told her that if the counselor needed it, to have the counselor call me and I would talk to him about it directly. No counselor ever contacted me about this.
>
>Truthfully, I haven't had much to do with Tom since this all came out. I assume he has replaced his broken laptop, and that Debra still has the laptop I copied the files from.
>
>This is a true statement, given freely and voluntarily by me, and written by Det. Steve Taylor.

Gov't Ex. A.

Taylor prepared an affidavit and application for a search and seizure warrant, authorizing a search of the Mueller residence, including any laptop computers and computer-related equipment located therein and the seizure and subsequent forensic analysis of all such equipment. *See* Gov't Ex. A. However, on August 23, 2010, the district judge who reviewed Taylor's application issued a search warrant calling for the search and seizure of single "black/silver colored laptop computer, as described in the affidavit." Gov't Ex. B. Taylor's affidavit in support of his application for a search warrant incorporates Gadberry's statement, in which he describes a black and silver laptop, with no other distinguishable features.

On August 23, 2010, Taylor and Searcy Police Detective Brian Wyatt went to the Mueller residence and knocked on the door, which Debra Mueller ("Mueller") answered. During the suppression hearing, Mueller testified that she "kind of told [Taylor and Wyatt] to hold on" while she attended to her dogs, and when she came back, Taylor and Wyatt were

standing inside the door.  However, Taylor and Wyatt testified that Mueller invited them inside the house.  Standing inside the doorway, Taylor and Wyatt informed Mueller that they had a search warrant for a laptop computer, and it is undisputed that Mueller immediately retrieved a black and silver laptop from the front hallway closet and gave it to the detectives.

After Mueller handed over the laptop, Taylor and Wyatt asked her whether Defendant had access to other computers in the house, and she showed them to another black and silver laptop sitting on the kitchen table, which she had been using to conduct a job search.  According to Taylor and Wyatt, they asked Mueller if they could take the second computer for examination at the crime lab, and she agreed.  Both detectives testified that Taylor read a permission to search form to Mueller, which she signed.

It is undisputed that Debra Mueller signed a form titled "Permission to Search," which states in part, "I willingly give my permission to the above named officer(s) to conduct a complete search of the premises and property, including all buildings and vehicles, both inside and outside of the property located at . . . (2) laptop computers–(1) Toshiba Model . . . . (1) Chembook Model . . . . " Govt's Ex. C.  The paragraph immediately above Debra Mueller's signature reads: "This written permission to search without a search warrant is given by me to the above officers voluntarily and without any threats or promises of any kind." *Id*.

At the hearing, Mueller acknowledged that she permitted Taylor and Wyatt to see the second computer.  When asked whether the detectives asked if they could *take* the computer, Mueller answered: "I don't know if they said it or if I just assumed that they were because they had them all there together, you know, wiring things down off of them.  And then they did as for another computer, so." Hr'g Tr. at 59.  Mueller further testified that the detectives told her that

4

the document she signed was a receipt, which she did not read and which was not read to her before she signed it. It is undisputed that Wyatt completed a receipt form before he left the Mueller residence, which lists the computers that he and Taylor took from the residence. The form does not contain Mueller's signature. Gov't Ex. D.

## II.

Defendant asserts several arguments in support of his motion to suppress evidence of the second computer seized by Taylor and Wyatt on August 23, 2010. First, Defendant argues that the search warrant in question did not authorize seizure of the second computer.[1] However, for reasons that follow, the Court finds that Debra Mueller voluntarily consented to seizure of the second computer, which makes it unnecessary to address Defendant's initial argument. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973)(noting that consent is a well-recognized exception to the warrant and probable cause requirements).

Second, Defendant argues that Debra Mueller did not voluntarily consent to seizure of

---

[1] Defense counsel argues that pursuant to *Maryland v. Garrison*, 480 U.S. 79, 107 S. Ct. 1013 (1987), Taylor and Wyatt were required to contact the issuing magistrate when they discovered two black and silver laptops were present at the Mueller residence. *Garrison* involved the mistaken execution of a valid search warrant on the wrong premises. Police obtained a search warrant for a person named McWebb and the third floor apartment of a specific residence. When the officers obtained the warrant, they were unaware that the third floor of the residence contained two apartments: one rented by McWebb and the other by Garrison. Still unaware that the third floor housed two separate apartments, the officers began searching Garrison's dwelling and found evidence of contraband, which provided the basis for Garrison's conviction. The Supreme Court held that under the circumstances, the seizure of contraband was not unreasonable under the Fourth Amendment. The Court reasoned that the validity of the search depended on the objective reasonableness of the officers' failure to realize the warrant's overbreadth, and that the objective facts available to the officers at the time of the search did not suggest any distinction between Garrison's dwelling and the third floor premises.

the second laptop computer despite signing a consent form.[2]  The government bears the burden of proving voluntary consent by a preponderance of the evidence, and the standard for measuring the scope of consent is that of "'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the individual?" *United States v. Adams* 346 F.3d 1165, 1171 (8th Cir. 2003)(citing *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, (1991)).  In determining whether consent to search was voluntary, a court must consider the totality of the circumstances, including the nature of the encounter and the characteristics of the consenting party. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041(1973).

   Relevant facts include the characteristics of the person giving consent: (1) the person's age; (2) the person's general intelligence and education; (3) whether the person was intoxicated or under the influence of drugs when consenting; (4) whether the person consented after being informed of their right to withhold consent. *Id*. at 381.  The Court may also consider the environment in which the consent was given, including whether the person giving consent (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred. *Id*.

   According to Mueller's testimony, she is a nurse with a graduate degree and was clearheaded and not under the influence of drugs when the detectives entered her home.  The

---

[2] There is no dispute concerning Debra Mueller's authority to consent to seizure of the second laptop computer.

record contains no evidence that Taylor or Wyatt threatened or physically intimidated Mueller at any time during their encounter, or that Mueller relied on promises or misrepresentations when she handed over the laptop computers. Mueller claims that the detectives told her that the consent form she signed was merely a receipt,[3] but she testified that she signed the document "with the understanding that this is what they had and this is what they were taking from my house and that . . . was *permission* for them to take that from my house the items that they had listed." Hr'g Tr. at 60(emphasis added). As for Mueller's testimony no one read the consent

---

[3]Defendant contends that Detective Wyatt committed a "Freudian slip" during cross-examination when he stated that Debra Mueller "voluntarily signed the receipt." According to Defendant, Wyatt's slip corroborates Mueller's testimony that the detectives told her she was signing a receipt. But a careful reading of the transcript shows that Wyatt specifically testified that Mueller voluntarily signed a "permission to search form," and his reference to a receipt was inadvertent and influenced by the wording of counsel's question:

> Q: Okay. Just tell us about [the execution of the search warrant].
>
> A: Okay. The day - - - as I stated, it was the same day that the judge signed off on the search warrant, we executed the search warrant at the Muller residence in Searcy. . . . We then asked Mrs. Mueller if there were any other computers in the house that Mr. Mueller had access to, and she said that there was, there was another one in the kitchen. *So, Detective Taylor read a permission to search form to Mrs. Mueller in which she agreed to and voluntarily signed.* And we explained that we would like to take both of the computers with her permission to have them searched to see if there was any child pornography on either one of them, and she voluntarily gave us that laptop as well. And that's when I issued a receipt to her describing the laptops by name, description, and serial number, and which she signed as well and given a copy of that receipt.
>
> Q: And when she *signed that receipt*, did she appear to voluntarily do so?
> A: Yes, she voluntarily signed the receipt.

Hr'g Tr. at 40-41(emphasis added).

form to her, the Court finds credible Taylor's and Wyatt's testimony that Taylor read the form to Mueller before she signed it. Furthermore, the Court credits Taylor's and Wyatt's testimony that before they left the Mueller residence, Mueller stated that she was using the second laptop to conduct a job search, and she voiced concern as to when it would be returned. The Court finds that Mueller's ability to express concern regarding return of the second laptop indicates that her consent was not the product of duress or coercion. Based on the totality of the circumstances, the Court finds that Debra Mueller voluntarily consented to the seizure of the second laptop computer.

Third, Defendant argues that because the search was conducted in a home, it was presumptively unreasonable, and the standard for voluntary consent should be higher. Searches and seizures inside a home *without a warrant* are presumptively unreasonable. *See Groh v. Ramirez*, 540 U.S. 551, 559, 124 S.Ct. 1284 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371 (1980)). Here, however, the detectives entered the home pursuant to a valid search warrant, and after Mueller surrendered the first computer, the detectives reasonably inquired whether Defendant had access to other computers in the home. *See United States v. Martinez,* 358 F.3d 1005, 1009 (8th Cir.2004)(noting that officers "may ask a person for consent to search or other types of cooperation without violating the Fourth Amendment as long as they do not induce cooperation by coercive means."). The Court finds no merit to Defendant's argument.

### III.

After careful consideration, and for the reasons stated, the motion to suppress (docket entry #12) is DENIED.

IT IS SO ORDERED THIS 7th DAY OF DECEMBER, 2011.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE